1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10

11  CHARMAINE J. GERMANY,              )   NO. EDCV 04-00408-MAN
                                       )
12                                     )
                    Plaintiff,         )
13       v.                            )   MEMORANDUM OPINION AND ORDER
                                       )
14                                     )
    JO ANNE B. BARNHART,               )
15  Commissioner of the               )
    Social Security Administration,    )
16                                     )
                    Defendant.         )
17  _____  )

18       Plaintiff filed a Complaint on April 8, 2004, seeking review of the

19  denial  by  the  Social  Security  Commissioner  ("Commissioner")  of

20  Plaintiff's claim for supplemental security income benefits ("SSI").  On

21  May 4, 2004, the parties filed a "Consent to Proceed Before a United

22  States Magistrate Judge," pursuant to 28 U.S.C. § 636.  The parties

23  filed a Joint Stipulation on December 17, 2004, in which:  Plaintiff

24  seeks an order reversing the Commissioner's decision denying benefits

25  and either directing the payment of benefits or remanding the case to

26  the Commissioner for a new hearing; and Defendant requests that the

27  Commissioner's decision be affirmed.  The Court has taken the parties'

28  Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on September 3, 2002.[1] (Administrative Record ("A.R.") 46-51.)  Plaintiff claims to have been disabled since January 1, 1996, due to bipolar disorder.  (A.R. 9, 46.) Plaintiff has past relevant experience as a data entry operator, file clerk, sales clerk, sales clerk manager, janitor, and housekeeper-babysitter.  (A.R. 12.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On November 18, 2003, Plaintiff, who was represented by counsel, appeared personally and testified at a hearing before Administrative Law Judge Jay E. Levine ("ALJ").  (A.R. 195-214.) In a December 12, 2003 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision.  (A.R. 9-13, 3-5.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his December 12, 2003 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability.  (A.R. 12.)  He found that Plaintiff has a combination of impairments that are "severe," consisting of possible bipolar disorder with social anxiety, but she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1,

---

[1]    In addition, Plaintiff filed an application for disability benefits in 1992, which was denied at the initial level and not pursued further.  (A.R. 9.)

Subpart P, Regulations No. 4.   (A.R. 11-13.)   The ALJ found that
Plaintiff's allegations regarding her limitations were not totally
credible.   (A.R. 13.)   The ALJ further found that Plaintiff has the
residual functional capacity to "understand, remember, and carry out
simple instructions constantly, and complex and detailed instructions
occasionally, and interact with supervisors and coworkers occasionally,
and interact with supervisors and coworkers occasionally, and the public
less than occasionally." (*Id.*)   The ALJ found that Plaintiff could
perform her past relevant work. (*Id.*)   Thus, the ALJ concluded that
Plaintiff was not disabled. (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine
whether it is free from legal error and supported by substantial
evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The
Commissioner's decision must stand if it is supported by substantial
evidence and applies the appropriate legal standards. Saelee v. Chater,
94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a
mere scintilla but less than a preponderance -- it is such relevant
evidence that a reasonable mind might accept as adequate to support the
conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of
the Commissioner, this Court nonetheless must review the record as a
whole, "weighing both the evidence that supports and the evidence that
detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary
of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also*

1  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
2  responsible for determining credibility, resolving conflicts in medical
3  testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d
4  1035, 1039-40 (9th Cir. 1995).   This Court must uphold the
5  Commissioner's decision if it is supported by substantial evidence and
6  free from legal error, even when the record reasonably supports more
7  than one rational interpretation of the evidence. *Id*. at 1041; *see also*
8  Morgan v. Commissioner of the Social Security Administration, 169 F.3d
9  595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th
10 Cir. 1995).

12                              **DISCUSSION**

14     Plaintiff alleges two disputed issues.  First, Plaintiff contends
15 that the ALJ failed to give proper weight to the opinion of Plaintiff's
16 treating psychologist, Dr. Kipp Thorn.  Second, Plaintiff contends that
17 the ALJ failed to pose a complete hypothetical question to the
18 vocational expert.  (Joint Stip. at 2.)

20 **A.   The ALJ Did Not Fail To Give Proper Weight To The Opinion Of**
21     **Plaintiff's Treating Psychologist.**

23     Ordinarily, the opinions of a treating physician should be given
24 great weight, if not controlling weight. *See* Magallanes v. Brown, 881
25 F.2d 747, 751 (9th Cir. 1989)(quoting Sprague v. Bowen, 812 F.2d 1226,
26 1230 (9th Cir. 1987)); Social Security Ruling 96-2p.  When the ALJ
27 rejects the opinion of a treating physician, even if it is contradicted,
28 the ALJ may reject that opinion only by providing specific and

                                   4

legitimate reasons for doing so, supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief, and unsupported by clinical findings.  Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  *See also* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(conflicting opinion of an examining doctor provides the requisite specific and legitimate reason for rejecting the treating physician's opinion and constitutes substantial evidence).

Here, the ALJ discussed the medical evidence regarding Plaintiff's treating and examining physicians, stating:

[Plaintiff] sought treatment at a public mental health clinic in August 2001, saying she had been referred by her primary care physician and reporting a history of depression and inability to care for herself and her children.  Ex. 3F at 31. Formal mental status examinations at that time were normal although there were vague references to possible auditory hallucinations and complaints of forgetfulness and the overall level of dysfunction was rated as moderate.  Ex. 3F at 34-35. The findings at the time of the initial psychiatric evaluation in September 2001 were similar except that [Plaintiff's] mood was depressed with congruent affect.  Ex. 3F at 28.  Treatment was irregular thereafter, and when seen on November 14, 2001, [Plaintiff] presented with normal mood and full affect, the doctor conclud[ed] that [Plaintiff] was having a mood swing and that [Plaintiff] was noncompliant with treatment.  Ex. 3F

5

at 24.  Treatment continued to be irregular through 2001, and when reassessed in February 2002, the treatment source diagnosed bipolar disorder, not otherwise specified (NOS) and assessed a global assessment of function (GAF) score of 45 indicating serious limitation of function in one area [of] functioning and noting a problem with [Plaintiff's] primary support system.  Ex. 3F at 18-23.  The balance of the treatment records through September 3, 2003 indicated irregular treatment and poor compliance with prescribed treatment through most of 2002, but clinical findings were generally normal in terms of mood, affect, and overall presentation.  Ex. 3F at 5-17.  Beginning in January 2003, she reported auditory hallucinations involving hearing dead relatives and visual hallucinations shadow were reported in February 2003, but clinical findings were generally normal except for depressed mood and restricted effort on one visit.  Ex. 3F at 2-4.  The balance of the clinical notes indicated ongoing complaints of voices and shadows, but the emphasis was on [Plaintiff's] domestic problems, the clinical findings remaining unchanged and generally normal, and the treating source concluded that [Plaintiff] was having problems with social anxiety and that her condition was stable.  Ex. 5F at 4ff.

.    .    .    .

I note that the consultative psychiatric examiner noted problems with [Plaintiff's] presentation in November 2002 that

6

suggested that she might be exaggerating her complaints and that that examiner on whom the State Agency psychiatric consultants relied concluded that [Plaintiff] at most was only limited in terms of complex tasks and that only mildly so. Ex. 1F.  I note though that [Plaintiff] has been in treatment for an extended period of time and that her treating source considers her mental impairment, which is tentatively diagnosed as bipolar disorder with social anxiety[,] has been of more than mild severity, but not markedly or extremely so, her condition being stable, and not needing more intensive treatment.

.    .    .    .

[Plaintiff's] treating source has not provided any indication that [Plaintiff] cannot work because of her mental impairments.

(A.R. 10-11.)  The ALJ found that Plaintiff can "understand, remember, and carry out complex and detailed instructions occasionally, and simple instructions constantly, in an object oriented environment; and interact with supervisors and coworkers occasionally, and the public less than occasionally."  (A.R. 12.)

Plaintiff contends that the April 14, 2002 Care Necessity Assessment completed by Dr. Thorn, her treating psychologist at the San Bernardino County Department of Behavior Health ("San Bernardino County"), shows more limitations than the ALJ found.  Specifically,

7

1  Plaintiff contends that Dr. Thorn's opinion that there was a
2  "significant impairment in an important area of life functioning" and a
3  "[p]robability of a significant deterioration in an important area of
4  life functioning" is evidence of greater limitations, as well as Dr.
5  Thorn's Global Assessment of Functioning ("GAF") of 45.[2] (Joint Stip.
6  at 3.)  Plaintiff contends that this matter must be remanded to have Dr.
7  Thorn's opinions properly discussed and considered by the ALJ. (Joint
8  Stip. at 5.)

9

10     Defendant contends that a GAF is not an opinion of medical
11  disability.  Indeed, a GAF score is not determinative of a mental
12  disability for social security claim purposes.  *See* Revised Medical
13  Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65
14  Fed. Reg. 50746-01 (August 21, 2000)("We did not mention the GAF scale
15  to endorse its use in the Social Security and SSI disability programs,
16  . . . [The GAF scale] does not have a direct correlation to the severity
17  requirements in our mental disorder listings"); <u>Howard v. Commissioner</u>,
18  276 F.3d 235, 241 (6th Cir. 2002)(rejecting the claimant's argument that
19  the ALJ improperly failed to consider her GAF score from her treating
20  physicians in assessing her residual functional capacity, reasoning that
21  "[w]hile a GAF score may be of considerable help to the ALJ in
22  formulating the RFC, it is not essential to the RFC's accuracy.").
23  Thus, to the extent that Plaintiff argues that the ALJ erred in not
24  finding a more restricted residual functional capacity based on Dr.

25
26     [2]   A GAF of 41 to 50 indicates "serious symptoms (e.g., suicidal
   ideation, severe obsessional rituals, frequent shoplifting) or any
27  serous impairment in social, occupational, or school functioning (e.g.,
   no friends, unable to keep a job)." American Psychiatric Assoc.
28  Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994)
   ("DSM-IV").

Thorn's GAF assessment of 45, that argument fails.

A review of the ALJ's decision above shows that, while the ALJ did not identify Dr. Thorn's Care Necessity Assessment by name, he cited and discussed portions of that report, expressly noting Dr. Thorn's diagnosis of bipolar disorder not otherwise specified, finding of a GAF score of 45 and "indicating serious limitation of function in one area," and notation of "a problem with [Plaintiff's] primary support system." (A.R. 10-11.)  While the page of this report on which Plaintiff relies notes that she meets the "medical necessity" criteria for Medi-Cal due to a "significant impairment in an important area of life functioning" and a "probability of a significant deterioration in an important area of life functioning" (A.R. 149), Dr. Thorn's report does not show that he found any particular limitation that would impact Plaintiff in a work or work-like situation.  Thus, there was no specific "limitation" for the ALJ to reject in Dr. Thorn's report.

Progress notes submitted from Plaintiff's treating mental health professionals at San Bernardino County similarly show that, while Plaintiff was depressed and sometimes claimed to hear voices, she largely complained about her domestic problems, and her appearance and overall demeanor remained positive.  Significantly, these progress notes do not reference any limitations regarding Plaintiff's ability to work. (*See* A.R. 152 -- March 18, 2002 progress notes showing that Plaintiff reported that she was depressed, heard voices, and had no motivation, but observing that she was clean, dressed casually, had fair eye contact, and was cooperative; 146 -- May 29, 2002 progress notes showing that Plaintiff reported that she "gets stressed out" but "has no

9

complaints today," and was clean, dressed casually, and cooperative, provided fair eye contact, and exhibited no psychomotor agitation or retardation; 145 -- June 26, 2002 progress notes showing that Plaintiff was irritated with her husband and tearful when talking about him, but was clean, casually dressed, and provided fair eye contact; 144 -- July 24, 2002 progress notes showing that Plaintiff reported that she was depressed and having problems with her husband, had mood swings, saw shadows, and heard voices, but observing that she was fairly groomed, provided fair eye contact, spoke in spontaneous speech, and appeared to have a euthymic mood; 143 -- August 20, 2002 progress notes showing that Plaintiff reported that she had "good days and bad days" and her husband was irritating her by "accusing" her of things, but observing that she was clean, provided fair eye contact, spoke in spontaneous speech, and had a euthymic mood; 141 -- September 17, 2002 progress notes reflecting that Plaintiff said she was stressed due to problems with her husband and denied having any audio or visual hallucinations, and noting that Plaintiff was "clean, casually dressed, [cooperative], [provided] fair eye contact, no psychomotor agitation/retardation; speech spontaneous; mood euthymic, affect full range and appropriate"; 139 -- October 22, 2002 progress notes showing that Plaintiff had separated from her husband and denied audio and visual hallucinations, and was observed to be clean and casually dressed, showed no psychomotor agitation, had a dysphoric mood and restricted affect, but was not reacting to any internal or external stimuli at that time; 138 -- November 26, 2002 progress notes showing that: Plaintiff reported that she was emotional at her SSI evaluation and "couldn't handle the stress at work," was having difficulty with a nephew who was living with her, was having audio/visual hallucinations; was observed to be clean, casually dressed,

cooperative, calm and relaxed; had a euthymic mood and appropriate affect; and was not reacting to internal/external stimuli at that time.)

In addition, the San Bernardino County records demonstrate, as the ALJ noted, that Plaintiff was not consistently in compliance with her treatment.  (A.R. 141 -- September 17, 2002 progress notes indicating that Plaintiff was not in compliance with her medication plan; 153 -- February 13, 2003 progress notes indicating that Plaintiff did not attend her appointment, but called in for a re-fill of her medication; 155 -- December 12, 2001 progress notes specifically stating that Plaintiff was "non-compliant" with her treatment; 156 -- November 14, 2001 progress notes indicating that Plaintiff was not in compliance with her medication plan and had missed her appointment twice.)  *See, e.g.,* Smolen, 80 F.3d at 1284 (ALJ may consider a claimant's compliance with her prescribed treatment in assessing the severity of a claimant's symptoms).

Furthermore, the report of Dr. Linda Smith, a psychiatrist who examined Plaintiff at the request of the Commissioner, provides substantial evidence for the ALJ's residual functional capacity finding. Dr. Smith performed a mental status examination on Plaintiff and diagnosed her with mood disorder, not otherwise specified and assessed her with a GAF of 65.[3]  (A.R. 107-13.)  In addition, Dr. Smith found that Plaintiff is "not impaired" in her abilities to:  "understand, remember

---

[3]   A GAF of 61 to 70 is indicative of "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV, at 32.

or complete simple commands"; "understand, remember or complete complex commands"; "comply with job rules such as safety and attendance"; "respond to change in the normal workplace setting"; and "maintain persistence and pace in a normal workplace setting." (A.R. 113.) Dr. Smith found that Plaintiff was "mildly impaired" in her abilities to: "interact appropriately with supervisors, co-workers, or the public because of some possible interference from mood." (*Id.*) Dr. Smith found Plaintiff not to be a credible historian, and explained:

> [Plaintiff] states that she has depression, anxiety, bipolar disorder and paranoia; there was no evidence of any of these problems on interview or in the clinic. She also says she hears voices but most of what she describes are not psychotic type hallucinations. She could have some auditory and visual misperceptions of the type sometimes seen with stress and depression; her claim of occasional phrases is not described very well. On interview she gestured normally, she was calm and relaxed and there was no evidence at all of these symptoms. It should also be noted that she wasn't an entirely credible historian because she was a positive responder, a little ingratiating and manipulative. Overall, she might be mildly impaired at most. She did have problems on the formal mental status examination but this did not appear to correlate with any observed psychiatric problem; therefore, much of it is probably background and suboptimal education. At most she may be mildly impaired but only mildly at this time. If she gets optimal psychiatric care her prognosis is fair to good.

1  (A.R. 112-13.)  *See also* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th

2  Cir.2002)("The opinions of non-treating or non-examining physicians may

3  . . . serve as substantial evidence when the opinions are consistent

4  with independent clinical findings or other evidence in the record.").

5

6      Accordingly, Plaintiff's arguments regarding the ALJ's improper

7  rejection of Dr. Thorn's opinion are unavailing, and the ALJ's residual

8  functional capacity assessment is affirmed.

9

10  **B.   <u>The ALJ's Hypothetical Question To The Vocational Expert Was</u>**

11      **<u>Proper</u>.**

12

13      "If a vocational expert's hypothetical does not reflect all the

14  claimant's limitations, then the 'expert's testimony has no evidentiary

15  value to support a finding that the claimant can perform jobs in the

16  national economy.'"  <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir.

17  1993) (quoting <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991)).

18  Thus, in posing a hypothetical to a vocational expert, the ALJ must

19  accurately reflect all of the claimant's limitations.  <u>Embrey v. Bowen</u>,

20  849 F.2d 418, 422-24 (9th Cir. 1987).

21

22      Here, the ALJ asked the vocational expert the following

23  hypothetical question:

24

25      Assume a hypothetical individual of [Plaintiff's] age,

26      education, and prior work experience.  Assume this person has

27      no exertional limitations; however, the person should not work

28      around dangerous machinery nor unprotected heights.  The

13

person is restricted to working primarily with things rather than people.  It does not preclude all contact with the public, but contact should be minimal.  Also, minimal contact with other employees and supervisors.  Could such a person perform [Plaintiff's] past relevant work?

(A.R. 212.)  The vocational expert responded that Plaintiff could perform her past relevant work as a janitor.  (A.R. 212.)

Plaintiff contends that the ALJ failed to pose a complete hypothetical question to the vocational expert, because the ALJ failed to consider properly the limitations set forth in Dr. Thorn's April 14, 2002 Care Necessity Assessment.  (Joint Stip. at 9.)

Here, the ALJ's hypothetical question adequately incorporates the ALJ's residual functional capacity assessment, *viz.*, that Plaintiff can "understand, remember, and carry out complex and detailed instructions occasionally, and simple instructions constantly, in an object oriented environment; and interact with supervisors ad coworkers occasionally, and the public less than occasionally." (A.R. 12.)  Because the ALJ's residual functional capacity assessment is based on substantial evidence, as noted above, the hypothetical question posed to the vocational expert was proper.  Accordingly, the ALJ's finding that Plaintiff can perform her past relevant work as a janitor is based on substantial evidence and is affirmed.

///

///

///

14

**CONCLUSION**

Accordingly, for the reasons stated above, the Commissioner's decision denying benefits is AFFIRMED, consistent with this Memorandum Opinion and Order.  Judgment shall be entered affirming the decision of the Commissioner, consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 27, 2006

                                              /s/
                                    MARGARET A. NAGLE
                            UNITED STATES MAGISTRATE JUDGE

15